**Robert W. BARNEY**

v.

**STATE TAX ASSESSOR.**

Supreme Judicial Court of Maine.

Argued March 15, 1985.

Decided April 2, 1985.

Nutter, McClennen & Fish, Joseph J. Hurley (orally), Stuart R. Malis, Boston, Mass., Ralph A. Dyer, Portland, for plaintiff.

James E. Tierney, Atty. Gen., Clifford B. Olson, Asst. Atty. Gen. (orally), Augusta, for defendant.

Before McKUSICK, C.J., and NICHOLS, VIOLETTE, WATHEN, GLASSMAN and SCOLNIK, JJ.

SCOLNIK, Justice.

Robert W. Barney, a New Hampshire resident, appeals from a judgment of the Superior Court, York County, affirming a decision of the State Tax Assessor that denied a refund of his Maine income tax for the years 1980 and 1981. Barney challenges the authority of the State to tax his income earned at the Portsmouth Naval Shipyard, a federal enclave within Maine, on the alleged ground that it has not regained the jurisdiction to tax there that it ceded to the federal government in 1863. He further argues that the Privileges and Immunities Clause of Article IV of the United States Constitution bars Maine from prorating his deductions and exemptions according to the ratio of his Maine-earned to total income. Finding no merit in either contention, we affirm the judgment.

■ Appellant's first contention is disposed of by our decision in *Morse v. Johnson*, 282 A.2d 597 (Me.1971). By the Buck Act, 4 U.S.C. § 106, Congress in 1940 receded to Maine the jurisdiction to tax all incomes earned in a federal enclave within the State's geographical boundaries. *Howard v. Commissioners of Sinking Fund of City of Louisville*, 344 U.S. 624, 627–28, 73 S.Ct. 465, 467, 97 L.Ed. 617 (1953); *United States v. Lewisburg Area School Dist.*, 539 F.2d 301, 308 (3d Cir.1976). The Act removed the dam of federal exclusivity to that extent, allowing Maine's jurisdiction to flow back. *See* 1 M.R.S.A. § 1.

■ Barney and his wife earned in Maine 74% of the "adjusted gross income" declared on their federal tax return in 1980, and 72.5% in 1981. Accordingly, they were permitted by 36 M.R.S.A. §§ 5144–A and 5145 [1] to deduct and exempt on their Maine

---

1. 36 M.R.S.A. § 5144–A provides that,

    [t]he itemized deductions of a non-resident individual shall be determined in accordance with the provisions for a resident individual as contained in section 5125 and multiplied by a percentage arrived at by dividing the non-resident's adjusted gross income from sources within this State by his adjusted gross income he would be required to report if he were a resident.

    36 M.R.S.A. § 5145 provides that,

    [a] non-resident individual shall be allowed the personal exemptions allowed to resident individuals under section 5126, multiplied by

income tax returns only 74 and 72.5 percent respectively of the deductions and exemptions they would have been allowed as residents by 36 M.R.S.A. §§ 5125 and 5126 in those years. They were, of course, only required to pay tax to Maine on the portion of their income earned in Maine, since their New Hampshire income is constitutionally beyond this State's reach. *Shaffer v. Carter,* 252 U.S. 37, 57, 40 S.Ct. 221, 227, 64 L.Ed. 445 (1920). The balance of their income was presumably entirely tax-free, since New Hampshire levies no State tax on earned income. They had, therefore, no other opportunity to claim any tax benefits beyond the portion allowed them by Maine.

■ Concluding that Maine thereby denied them "substantial equality of treatment" with its own residents, without a justification satisfying the ideal of interstate comity enforced by the Privileges and Immunities Clause, *Austin v. New Hampshire,* 420 U.S. 656, 665, 95 S.Ct. 1191, 1197, 43 L.Ed.2d 530 (1975),[2] the Barneys claim a refund of the amount by which their tax would have been reduced had they been allowed 100% of a resident's deductions: a total of $271.52. We think that, not only is Maine's proration scheme "not more onerous in its effect" upon non-residents, *Shaffer v. Carter,* 252 U.S. at 52, 40 S.Ct. at 225, but it also effectuates a clearly sufficient State purpose, *viz.,* "funding" no more than that share of tax benefits that is attributable to income earned within, and therefore taxable by, Maine. *Id.* at 57, 40 S.Ct. at 227; *Travis v. Yale & Towne Mfg. Co.,* 252 U.S. 60, 75–76, 40 S.Ct. 228, 230, 64 L.Ed. 460 (1920).

We do not agree with the appellant that Maine's scheme imposes a higher effective rate of tax on non-residents than on similarly situated residents. A resident and a non-resident are "similarly situated" when they have the same total income. Maine prorates deductions and exemptions exactly in proportion to the share of total income that it constitutionally may tax. This ensures that, like the non-resident in *Shaffer v. Carter,* the taxpayer is "called upon to make no more than his ratable contribution to the support of the state government." *Austin,* 420 U.S. at 664, 95 S.Ct. at 1197. Maine's scheme is neutral in its effect on residents and non-residents. Looking at any non-resident taxpayer's total income, it is clear that any variation between his effective rate and that of a similarly situated Maine resident will depend on his own State's base rate and tax benefit policy. In fact, like the appellant here, *every* New Hampshire resident whose income is partly earned in Maine and partly in New Hampshire will incur a lower effective tax rate on his total income than the similarly situated Maine resident. Maine's approach does not impose a greater burden on non-residents as a class, nor on any single taxpayer because he is not a resident.

In arguing that Maine must allow him the deductions and exemptions taken by a resident with the same *Maine* adjusted gross income, irrespective of how much other income he has, the appellant misapprehends the nature of deductions and exemptions. They are nothing but *tax* benefits, without any independent existence. The extent of Barney's eligibility for them is properly linked to the extent of his liability for taxes.

The United States Supreme Court has held that a State need not allow deductions not incurred in producing income within the State. *Shaffer v. Carter,* 252 U.S. at 57, 40 S.Ct. at 227. The companion case refuted the argument that New York improperly

a percentage arrived at by dividing the non-resident individual's adjusted gross income from sources within this State by his adjusted gross income he would be required to report if he were a resident.

**2.** Article IV, Section 2, Clause 1 of the United States Constitution provides that "[t]he Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States."

"For purposes of analyzing a taxing scheme under the Privileges and Immunities Clause the terms 'citizen' and 'resident' are essentially interchangeable." *Austin v. New Hampshire,* 420 U.S. at 662, n. 8, 95 S.Ct. at 1195, n. 8.

denied a deduction for home mortgage interest paid in Connecticut because, "there is no unconstitutional discrimination against citizens of other states in confining the deduction of expenses, losses, etc. in the case of non-resident taxpayers to such as are connected with income arising from sources within the taxing state...." *Travis v. Yale & Towne Mfg. Co.*, 252 U.S. at 75–76, 40 S.Ct. at 230.[3] Maine takes a more generous approach. Recognizing that, like Barney, a non-resident taxpayer may have more "personal" than "business" deductions, Maine allows that portion that is funded by income earned in Maine. *Gordon v. State Tax Assessor*, 455 A.2d 57 (Me.1983). The best way to determine for all taxpayers what portion is attributable to Maine-earned income is to prorate that income against the taxpayer's total income.

 The same approach is taken with "personal exemptions," tax benefits that compensate for the cost of living, not the cost of producing income. While Maine may not entirely deny exemptions to all non-resident taxpayers, *Travis v. Yale & Towne Mfg. Co.*, 252 U.S. at 79–81, 40 S.Ct. at 231–232, it may disallow that portion that corresponds to their actual out-of-state income. *See id.* at 81, 40 S.Ct. at 232; *Lung v. O'Chesky*, 94 N.M. 802, 617 P.2d 1317, 1319 (N.M.1980), *app. dis.*, 450 U.S. 961, 101 S.Ct. 1475, 67 L.Ed.2d 610 (1981) (upholding New Mexico's proration scheme). Maine's obligation to fund no more than a pro-rata share of a non-resident's tax benefits is a "necessary corollary" of the constitutional prohibition against taxing his out-of-State income. *Goodwin v. State Tax Comm'n*, 146 N.Y. S.2d at 177; *Shaffer v. Carter*, 252 U.S. at 57, 40 S.Ct. at 227.

The entry is:

Judgment affirmed.

All concurring.

---

**3.** Several States have followed these decisions in denying non-residents *any* deductions not connected with producing income within the taxing State. *See, e.g., Goodwin v. State Tax Comm'n*, 286 A.D. 694, 146 N.Y.S.2d 172 (App.Div.1955), *aff'd mem.*, 1 N.Y.2d 680, 150 N.Y.S.2d 203, 133 N.E.2d 711 (N.Y.1956), *app. dis.*, 352 U.S. 805, 77 S.Ct. 47, 1 L.Ed.2d 38 (1956); *Berry v. State Tax Comm'n*, 241 Or. 580, 397 P.2d 780 (1964),

*reh. den.*, 241 Or. 580, 399 P.2d 164, *app. dis.*, 382 U.S. 16, 86 S.Ct. 57, 15 L.Ed.2d 12 (1965). In each of those cases the United States Supreme Court rendered a decision on the merits of the Privileges and Immunities Clause challenge by dismissing the appeal for want of a substantial federal question. *Hicks v. Miranda*, 422 U.S. 332, 343–45, 95 S.Ct. 2281, 2289, 45 L.Ed.2d 223 (1975).